O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:            Attorneys **NOT** Present for Defendants:

**Proceedings:**            IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

In 2000, an arbitration panel convened under the auspices of the U.S. Department of Education (DOE) pursuant to the Randolph-Sheppard Act determined that the General Services Agency (GSA) had no right to terminate the vending permit of David Zelickson, a blind vendor who operated an espresso facility in the Roybal Federal Building in Los Angeles, California. The arbitration panel ordered Mr. Zelickson's reinstatement and awarded damages against GSA. GSA never complied, and another arbitration panel was convened by the DOE in 2008. The 2008 arbitration panel ordered the State of California's Department of Rehabilitation Business Enterprise Program (DOR) to reinstate Zelickson to the Roybal Building (or a comparable facility) and awarded $140,000 against the DOR as damages for DOR's "failure to sue GSA." Plaintiff Antony P. Sauer, as Director of the DOR, brought this action appealing the decision of the 2008 arbitration panel. Defendant DOE also takes the position that the award should be set aside. Mr. Zelickson, as Intervenor, argues that the award should be affirmed. For the reasons set forth below, the Court AFFIRMS the decision of the arbitration panel.

## II.    BACKGROUND ON RANDOLPH-SHEPPARD ACT

The Randolph-Sheppard Vending Stand Act ("Randolph-Sheppard Act" or the "Act"), 20 U.S.C. §§ 107-107f, establishes a voluntary federal-state program to give blind persons priority to operate vending facilities on federal property. The Secretary of Education is responsible for administering the Act at the federal level. *See* 20 U.S.C. § 107a. At the state level, state licensing agencies, or "SLAs" are designated by the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

Secretary of Education to implement the program. If a state agency wishes to participate in the program, the state agency seeking to be designated as a Randolph-Sheppard SLA must apply to the Secretary of Education and agree to a number of conditions, including to "provide to any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a fair hearing, and to agree to submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration as provided in section 107d–1 of this title." 20 U.S.C. § 107b(6).

Section 107d-1 of the Act, which addresses the right of both a vendor and an SLA to file a complaint and convene an arbitration panel, states as follows:

**(a) Hearing and arbitration**

Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary [of Education] who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

**(b) Noncompliance by Federal departments and agencies; complaints by State licensing agencies; arbitration**

Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder . . . such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

and binding on the parties except as otherwise provided in this chapter.[1]

## II.   FACTS

### A.   Events Leading up to the First Arbitration

On May 18, 1995, Mr. Zelickson was selected by DOR as the vendor for the Roybal Federal Building. (AR at 00155-170.)[2] On August 16, 1996, GSA notified DOR that "effective October 1, 1996, the Randolph Sheppard permit for dry vending services at the Roybal Federal Building [will be] terminated" due to an expansion project at the building. (*Id*. at 00173.)  In early 1997, GSA informed DOR of problems regarding Mr. Zelickson's conduct while a vendor at the Roybal Building. (*Id*. at 00175; 00182-183.) In a letter dated April 15, 1997, GSA explained that it was not asking for the removal of Mr. Zelickson as the vendor, but that once the new coffee/espresso bar opened following the building renovations, Mr. Zelickson would not be approved as the vendor for the new Roybal facility. (*Id*. at 00182-83.)  In a letter dated October 3, 1997, GSA confirmed its position that Mr. Zelickson was not the approved vendor of the new coffee bar facility. In the letter, GSA wrote, "We never requested the removal of Mr. Zelickson as the vendor of the new coffee bar facility since he was never selected as its vendor. Mr. Zelickson was the vendor of the dry stand which was permanently closed as of October 1, 1996." (*Id*. at 00207.)

Prior to the reopening of the Roybal Federal Building vending facility, DOR sought clarification from GSA of Mr. Zelickson's status as the vendor at that facility. In a letter dated October 14, 1997, DOR argued that it, and not GSA, "is in charge of vendor licensing and selection under the Randolph-Sheppard Act. According to [DOR's Business Enterprise Program's] records, Mr. Zelickson is the vendor of record for the

---

[1] Neither side has claimed that any exception is applicable to either the 2000 or 2008 awards. DOE maintains that its sovereign immunity precludes an award of money damages (as discussed further below), but does not claim any specific statutory exemption that would affect the finality of the award rendered against it.

[2] Throughout this Order "AR" refers to the "Agency Record" and the pinpoint citation refers to the Bates number or numbers of the Agency Record where the cited document or documents are located.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

Roybal Federal Building and will be the vendor for the espresso facility." (*Id*. at 00210-211.)

Despite DOR's effort to retain Mr. Zelickson as the vendor at the Roybal Facility, GSA suspended DOR's permit to operate the vending facility at the Roybal Building effective November 14, 1997. (*Id*. at 00218.) On October 19, 1998, DOR filed an administrative complaint against GSA and requested arbitration pursuant to 10 U.S.C. § 107d-1(b) of the Randolph-Sheppard Act. (*Id*. at 00233.)

**B. 2000 Arbitration Order and Award**

On December 26, 2000, an arbitration panel convened by the Department of Education found that the GSA had wrongfully removed Mr. Zelickson from his position as vendor of record at the Roybal Building. The panel found that the GSA had withdrawn and reissued the vending permit as a pretext for ousting Mr. Zelickson. The panel concluded that the real dispute concerned the suitability of Mr. Zelickson to operate as a vendor in the Roybal Building, and that the GSA did not pursue this dispute under appropriate procedures. (*See* AR at 00787-815 [Arbitration Order dated December 26, 2000].) The panel concluded that GSA had 30 days from the date of its decision to decide whether to litigate the question of Mr. Zelickson's qualifications, and that if GSA chose not exercise its option, "it must pay Mr. Zelickson the damages to which he is entitled, namely the difference between what he was able to earn and what [the new vendor at the Roybal Building facility] earned while he served as the vendor in the Roybal Building plus interest on those amounts of money." (*Id*. at 00814-15.)

**C. GSA Refuses to Comply with the 2000 Arbitration Order.**

On February 23, 2001, GSA invited the arbitration panel to provide guidance on "how the question of whether vendor David Zelickson is qualified to operate the espresso bar in the Roybal Federal Building is to be resolved." (AR at 301-302 [February 23, 2001 Letter from GSA to Arbitrator Gerald R. McKay].) In response, Gerald R. McKay, one of the arbitrators, replied with suggestions on how GSA could work with the State to provide a forum to consider evidence regarding Mr. Zelickson's qualifications, and also suggested to GSA that it simply reinstate Mr. Zelickson. (AR at 306-307 [March 8, 2001 Letter from McKay to GSA].) Mr. McKay also directed the State to "cooperate

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | | Date | March 17, 2010 |
|---|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | | |

immediately with GSA in providing a forum for GSA to make its claim" that Mr. Zelickson should not be given the opportunity to operate the espresso bar. (*Id.*)  From the record, it appears that no attempt was ever made by GSA or the State to resolve their dispute over Mr. Zelickson's qualifications.  On March 23, 2001, DOR sent a letter to Mr. McKay stating that it was DOR's position that since more than 30 days had elapsed since the arbitration award was handed down, GSA waived its option to litigate Mr. Zelickson's qualifications, and that Mr. Zelickson should therefore immediately be reinstated to the Roybal Building facility. (AR at 308-09 [March 23, 2001 Letter from DOR to McKay].)  In response to DOR's letter, Mr. McKay replied that "[i]f GSA chooses not to respond as we directed in the [December 26, 2000] decision and the clarification [that DOR sought on February 23, 2001], then the burden is on your agency to enforce our decision by filing a petition in court to do so." (*Id.* at 00312 [Letter dated March 27, 2001].)

      Subsequently, Mr. Zelickson and the DOR wrote repeated letters seeking to enforce the award, but were ultimately unsuccessful.  On March 27, 2001, DOR sent a letter to GSA demanding that it terminate the new Roybal Building vendor's contract and reinstate Mr. Zelickson.  DOR also sought the assistance of DOE, but DOE responded that "despite the fact that DOE is DOR's federal oversight agency, [it] is not in a position to exert pressure on GSA to comply with the award." (*Id.* at 00320-321 [Nov. 1, 2001 letter from DOR to Zelickson].)  The administrative record reveals that from 2001 to 2003, DOR indicated to both Mr. Zelickson and GSA that it might bring suit to enforce the award. (*See, e.g., id.* at 00318-319 [Sept. 14, 2001 Letter from DOR to Zelickson] ("the next step to enforce the judgment would be to obtain approval to file suit in federal court"); 00336 [Dec. 6, 2002 letter from California Attorney General's Office to GSA] ("[I]n the absence of either compliance with the Decision and Award or some other resolution, my client has instructed me to file suit to enforce that Decision."); 00855-857 [July 31, 2003 letter from DOR to GSA] ("[b]ased on prior court decisions, DOR may have a federal statutory obligation to assert the rights of the vendor if a federal agency has violated the Act, since the vendor has no remedy against the federal agency.").)

      Following DOR's initial attempts at securing compliance from the GSA, DOR encouraged Mr. Zelickson to forego recovery pursuant to the 2000 award and to consider competing for other locations. (*See, e.g.*, AR at 00352 [June 30, 2005 letter from DOR to Zelickson] ("While it is possible that GSA may alter its position, it seems extremely

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

unlikely that GSA will pay any amount to you as damages. As you have been advised in the past, [DOR's Business Enterprise Program] urges you to consider competing for other locations"); 00353-354 [July 20, 2004 letter from DOR to Zelickson] (reiterating what was stated in June 30, 2005 letter).)

In February 2006, Mr. Zelickson requested an evidentiary hearing to determine whether DOR was obliged to continue to enforce the award. (AR at 00365-368 [Feb. 5, 2006 letter from Zelickson to DOR].) DOR refused Mr. Zelickson's request, stating that it was "not timely" and that DOR had fulfilled its obligations by making "numerous attempts" to convince GSA to comply with the award. (*Id*. at 00369-371 [March 7, 2006 letter from DOR to Zelickson].) Mr. Zelickson wrote to DOE to request an arbitration, and DOE granted Mr. Zelickson's request on August 2, 2006. (*Id*. at 00373 [August 2, 2006 letter from DOE to Zelickson].)

### D. 2008 Arbitration

The second arbitration panel considered three issues:

(1) "To what extent was the Department of Rehabilitation obligated to enforce the [2000 Arbitration Decision]";
(2) "did the DOR meet its obligation to [Mr. Zelickson]"; and
(3) if the DOR did not met its obligation to Mr. Zelickson, "what is the appropriate remedy?"

(AR at 01224-1226 [2008 Arbitration Order and Award at 1-3].)

The 2008 arbitration panel concluded that when GSA forced the removal of Mr. Zelickson from the Roybal Building vending facility, DOR was "compelled to contest that removal," that GSA did not comply with the 2000 arbitration award "despite the best efforts of DOR to secure compliance short of a lawsuit," and that therefore DOR was obligated to seek enforcement in federal court. (*Id*. at 01231 [2008 Arbitration Order and Award at 8].) Specifically, the 2008 panel stated that

> DOR abused its discretion by failing to bring a lawsuit against GSA to secure that compliance. There is no statutory or judicial prohibition against

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

> the enforcement of an arbitration decision, and a lawsuit is the only way an SLA can protect its interest in a facility it establishes, as well as protecting the blind vendor's interest. The blind vendor has no right to enforce a favorable arbitration award on his own. Other SLA's have brought suit against the federal government and there is judicial authority which suggests that both the federal government as well as state governments, through their licensing agencies, waive any immunity against being sued by their voluntary participation in the blind vendor program established under the Randolph-Sheppard Act.
>
> Even assuming that DOR has discretion whether or not to bring lawsuits against violating federal agencies, the DOR was obligated to sue GSA under the extant facts in order to enforce the [December 2000 Arbitration Decision and Award] and to meet its duty of protecting [Zelickson's] rights under the Act. There was no other way. By its failure to sue GSA, DOR became liable for the damages that were afforded to [Zelickson] pursuant to that arbitration.

(AR at 01231-1232 [2008 Arbitration Order and Award at 8-9].) The 2008 panel also stated that "there is judicial authority which suggests that both the federal government as well as state governments, through their licensing agencies, waive any immunity," citing *Premo v. Martin*, 119 F.3d 764 (9th Cir. 1997), *Delaware Dep't of Health & Social Services v. U.S. Dept. of Education*, 772 F.3d 1123 (3rd Cir. 1985), and *Tennessee v. U.S. Dep't of Education*, 979 F.3d 1162 (6th Cir. 1998). (*Id*. at 01232 [2008 Arbitration Order and Award at 9].)

     The 2008 panel then proceeded to award Mr. Zelickson damages in the amount of $140,000 (calculated at $2,500 per month of lost earnings for 56 months). (*Id*. at 1235.) The Panel also stated that it would "enforce the previous arbitration panel's direction of reinstatement of [Zelickson] to the Roybal facility" or a comparable facility and gave DOR 90 days to accomplish this reinstatement.[3] (*Id.* at 1235-36.)

---

     [3] One of the three arbitrators filed a dissenting opinion (*Id*. at 01238 ff.) Among other things, she found that "it is pure speculation for the majority to conclude that DOR would have been successful in obtaining money damages for Zelickson if it had brought suit against GSA." (*Id*. at 1239.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

On November 4, 2008, DOR filed the instant Complaint and appeal of the 2008 arbitration panel's order and award.

## IV. STANDARDS OF REVIEW UNDER THE RANDOLPH-SHEPPARD ACT AND APA

"An arbitral award under the Randolph-Sheppard Act is reviewed as an agency action under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. section 706." 20 U.S.C. § 107d-2. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

A reviewing court must set aside an agency's action if the action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Mt. St. Helens Mining and Recovery Ltd. Partnership v. United States*, 384 F.3d 721, 727 (9th Cir. 2004). An abuse of discretion may be found only if the decision is unsupported by substantial evidence or is based upon an improper understanding of the law. *Young v. Reno*, 114 F.3d 879, 883 (9th Cir. 1997).

## V. DISCUSSION

DOR argues that the 2008 arbitration panel exceeded its authority in ordering the State Licensing Agency to sue a federal agency when the federal agency failed to comply with the earlier arbitration award. DOR also argues that even if DOR had some obligation to sue GSA, the obligation is discretionary and therefore an SLA cannot be required to do so by an arbitration panel.

### A. Randolph-Sheppard Arbitration Panels may Award Specific Relief against SLAs for Failure to Protect Blind Vendors.

DOR makes two arguments why the arbitration panel exceeded its authority in

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

finding an obligation on the part of DOR to sue the GSA. First, DOR argues that because there is no provision under the Act obligating an SLA to sue the federal agency to compel compliance, an arbitration panel cannot find that an SLA has violated the Randolph-Sheppard Act by failing to do so. (*See* DOR Br. at 11.) The Court rejects this argument. Simply because the Act does not explicitly require an SLA to sue a federal agency to compel compliance does not mean that an arbitration panel exceeds its authority by finding that the SLA did have that obligation, where the arbitration panel made a determination that there was "no other way" to compel the federal agency's compliance.

The Ninth Circuit decision in *Premo v. Martin*, 119 F.3d 764 (9th Cir. 1997) is instructive. In *Premo* the Ninth Circuit upheld a Randolph-Sheppard Act arbitration panel's award against the DOR, because it failed to take effective steps to ensure a federal agency's compliance with the Act. The vendor had been granted a license by the DOR in 1985 to operate a snack bar and lunch room at the United States Post Office in Santa Ana, California. The vendor left the position in 1991 after experiencing financial losses and other difficulties. *Id.* at 767. Although the vendor relocated to other sites, she continued to experience financial difficulties, and the DOR revoked her license in 1992. Prior to the DOR's revocation of her license, the vendor twice petitioned the state for a hearing: in 1990, she challenged DOR's failure to take adequate steps to ensure compliance with the Act by the Postal Service, and in 1992, she filed a complaint with the state challenging the DOR's termination of her vendor's license. In both cases, the vendor was denied relief. To challenge these decisions, the vendor invoked her right to arbitration under the Act. In 1994, the arbitration panel ruled in favor of the vendor, finding that the DOR had violated the Act by "refusing to secure the renovation of the vending facilities at Santa Ana, by failing to insist on assignment of income from competing vending machines to [the vendor], *and by declining to take effective steps to prevent the Postal Service from renewing a contract with another vendor*." *Id.* (emphasis added). The panel ordered the DOR to reinstate the vendor's license, to restore her to a comparable vending facility, and to compensate her for lost earnings until she was restored. The State appealed the decision in federal court, arguing "that the Eleventh Amendment prohibits Randolph-Sheppard arbitration panels from awarding compensatory relief, and bars the enforcement of such awards in federal court." *Id.* The Ninth Circuit rejected both of these arguments, holding that (1) "the Eleventh Amendment does not apply to Randolph-Sheppard arbitration proceedings and thus does

Case 2:09-cv-01161-AHM-PLA   Document 52   Filed 03/17/10   Page 10 of 17   Page ID #:457

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

not limit the authority of arbitration panels convened under the Act to award compensatory relief," and (2) "the Randolph-Sheppard Act unequivocally guarantees that arbitration awards will be judicially enforceable." *Id*. at 770 and 771.

As in *Premo*, Mr. Zelickson's contention in the 2008 arbitration was that the DOR had failed to protect him from violations by a federal agency. And, as in *Premo*, the arbitration panel ordered the DOR to either reinstate him or assign him to a comparable facility, and to pay him damages in the amount of his lost income. Thus, like in *Premo*, the arbitration panel in this case did not exceed its authority by awarding the relief that it did to Mr. Zelickson.

> **B.    The 2008 Panel did not Exceed its Authority by Ordering the SLA to Enforce the 2000 Order and Award**.

DOR's second argument why the 2008 arbitration panel exceeded its authority is a bit more nuanced. DOR takes the position that because the 2000 panel lacked the authority to award the relief that it did, the 2008 panel lacked the authority to find the SLA violated the Act by failing to enforce the 2000 award, and therefore the 2008 panel's decision was in "excess of its authority." DOE joins DOR in this argument.

DOR and DOE begin with the premise that the authority of an arbitration panel adjudicating a dispute between an SLA and a federal agency (*i.e.*, a panel convened pursuant to 107d-1(b)) is limited to determining whether the actions of the federal agency are in violation of the Act. Upon the finding of a violation, it is the responsibility of the federal agency to terminate the violation and to take any other necessary remedial action. In support of this argument, DOR and DOE point to Section 107d-2(b)(2) of the Act, which states that if an arbitration panel convened pursuant to 107d-1(b)

> finds that the acts or practices of any such department, agency, or instrumentality are in violation of this chapter, or any regulation issued thereunder, the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel.

Therefore, according to DOE, the 2000 panel exceeded its authority by ordering specific

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

relief against the GSA, and the 2008 panel exceeded its authority in ordering the DOR to enforce the 2000 award when the GSA refused to do so.  (*See* DOE Br. at 6-7.)

This argument is directed primarily at the 2000 arbitration, which was convened pursuant to section 107d-1(b).  As a preliminary matter, the Court notes that GSA was the agency found in violation of the Act, and it did not contest the 2000 arbitration order and award.  If the GSA believed that the 2000 arbitration panel exceeded its authority in awarding damages against the GSA and other specific relief, the GSA had the right to appeal.  However, it did not, and therefore the decision became binding.  *See* 20 U.S.C. § 107d-1(b) ("[T]he decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.").  The question before the Court is thus not whether the 2000 panel exceeded its authority, but whether the 2008 panel exceeded its authority by ordering the SLA to sue to remedy the violation found by the 2000 panel.

First, the Court rejects DOR and DOE's argument that the SLA could not have sued the GSA to enforce the 2000 award.  The language of the Act confirms that Congress intended that federal agencies be required to comply with decisions of section 107d-1(b) arbitration panels.  The Act states that "the head of any such [federal] department, agency, or instrumentality *shall* cause such acts or practices to be terminated promptly and *shall* take such other action as may be necessary to carry out the decision of the panel."  20 U.S.C. § 107d-2(b)(2) (emphasis added).  The language is mandatory, not discretionary.  Because the Act imposes an affirmative duty, unless a court were available to entertain an action seeking to enforce the duty, the Act would be rendered meaningless.  Moreover, there is nothing in the Act that explicitly prevents an SLA from enforcing that mandate in federal court when the department head refuses to do so.[4]

The *Premo* court recognized that arbitrations under 20 U.S.C. § 107d-1(a) are

---

[4] Other courts have held that Randolph-Sheppard arbitrations between a state and a federal agency are enforceable in federal court.  In *Minnesota Dep't of Econ. Security v. Riley*, 107 F.3d 648 (8th Cir. 1997), for example, the Eighth Circuit affirmed a district court's ruling that the U.S. Department of Veteran Affairs (DVA) was required to comply with an arbitration panel's decision.  The arbitration panel had been convened under section 107d-1(b), when the state filed a complaint with the Secretary alleging that the DVA had denied the state licensing agency's application for a vending permit for a Veterans' Affairs Medical Center.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

judicially enforceable. It reasoned:

> The [Randolph-Sheppard Act] further provides that arbitration "*shall be final and binding on the parties.*" 20 U.S.C. § 107d-1(a) (emphasis added). In addition, the arbitration decision "shall be subject to appeal and review as a final agency action for purposes of chapter 7 of such title 5 [5 U.S.C. §§ 701-706 of the APA]." See 20 U.S.C. § 107d-2. The APA provides that "agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." 5 U.S.C. § 703. *Thus, by requiring the states to submit to "binding" arbitration, and by providing for appeal and review under the APA, the Randolph-Sheppard Act unequivocally guarantees that arbitration awards will be judicially enforceable.*

*Premo*, 119 F.3d at 770-71 (emphasis added). That reasoning also applies to arbitrations brought under 20 U.S.C. § 107d-1(b). By terms of the Act itself, decisions of section 107d-1(b) panels, like section 107d-1(a) panels, are "binding on the parties" and are reviewable in court as "final agency decisions." Thus, there is no reason why the SLA could not have sought judicial enforcement of the 2000 arbitration award.[5]

DOE's strongest argument why the 2000 panel exceeded its authority comes from *Maryland Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d 165 (4th Cir. 1996) in which the Fourth Circuit held that the district court had not erred in declining to enforce the award of an arbitration panel that was convened under section 107d-1(b) (*i.e.,* pursuant to a complaint by an SLA against a federal agency).

The facts underlying *Maryland* are as follows: the Maryland State Department of Education, Division of Rehabilitation Services ("Maryland"), the designated SLA for the state, applied to the United States Department of Veteran Affairs ("DVA") for a permit to operate a blind vending facility at the Veterans Affairs Medical Center ("VAMC") in Baltimore, Maryland. 98 F.3d at 167. The DVA denied Maryland's application, and Maryland filed a complaint and convened an arbitration pursuant to section 107d-1(b) to hear the dispute. The arbitration panel found in favor of Maryland and ordered DVA to

---

[5] Moreover, adopting the interpretation urged by DOE would discourage SLAs from bringing arbitrations on behalf of blind vendors in the first place, because even if the ruling was favorable, it would not be enforceable.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

enter negotiations with Maryland to permit its licensed vendor to operate a vending facility at the VAMC. The DVA sought reconsideration of the arbitration panel's decision. The arbitration panel denied reconsideration and further directed the DVA to turn over to Maryland the operation of its retail store at the VAMC. *Id*. at 168. The DVA refused to comply with the arbitration panel's order, and Maryland filed suit in federal district court to compel the DVA's compliance with the award or, alternatively, an order requiring the DVA to provide a satisfactory site for a blind vendor facility at the VAMC. The district court held that the arbitration panel had exceeded its authority under the Act "when it ordered a specific remedy. . . ." *Id*. The Fourth Circuit affirmed the district court's ruling, holding that section 107d-2(b)(2) of the Randolph-Sheppard Act does not authorize an arbitration panel convened by an SLA against a federal agency to award a specific remedy, even when the panel concluded that the federal agency had violated the Act. Its reasoning? "The plain language of this provision [section 107d-2(b)(2)] provides that a § 107d-1(b) arbitration panel will determine whether the federal entity is in violation of the Act, while the head of the federal entity will remedy the violation. Thus, the statute places the responsibility for ending the violation on the head of the federal entity and does not authorize a § 107d-1(b) arbitration panel to order the federal entity to take specific remedial action." *Id*. at 169.

*Maryland* does not deprive Zelickson of the right to have the 2008 panel's decision enforced. The award that the DOE is challenging here was rendered by a panel convened pursuant to § 107d-1(a) (*i.e.,* on behalf of a blind licensee against an SLA), whereas the arbitration award that was challenged in *Maryland* was rendered by a panel convened pursuant to § 107d-1(b) (*i.e.,* on behalf of an SLA against the overseeing federal agency). Section 107d-2(b)(2), upon which the Fourth Circuit relied, does not apply to this case; by its very language it is applicable only to an "arbitration panel convened by the Secretary to hear complaints filed by a state licensing agency . . ." 20 U.S.C. § 107d-2(b)(2). The *Maryland* court recognized this distinction. In citing *Georgia Dep't of Human Resources v. Nash*, 915 F.2d 1485 (11th Cir. 1990) as authority, the Fourth Circuit observed that its sister circuit had "noted differences in the composition of the arbitration panels convened under § 107d-1(a) and § 107d-1(b) *and in the remedial powers granted to those panels*." *Id*. at 170 (emphasis added). Accordingly, *Maryland* is not binding authority.

In this case, if the 2008 panel's order and award were not judicially enforceable,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

the outcome would be at odds with the legislative intent of the Act, and would lead to the type of absurdity that the *Maryland* court referred to (but did not find present in that case) as "so gross as to shock the general moral or common sense." *Id*. at 171. The GSA had flat-out refused to comply with the 2000 panel's order despite the panel's unequivocal finding that the GSA was in violation of the Act. DOR did make numerous attempts at securing GSA's compliance, but (to its apparent shame)**,** GSA made clear that it would not comply with the arbitration order. When DOR then turned to DOE for assistance, it was told that DOE had no authority to compel GSA's compliance. Such a result could not have been Congress's intent. In 1974—nearly forty years after the Act was passed—Congress determined that "State agencies are *still without recourse from decisions of Federal agencies* regarding blind vendor facilities on property they control." S. Rep. No. 93-937, at 20 (1974) (emphasis added). So it enacted these provisions as a "means by which aggrieved vendors and State agencies may obtain a *final and satisfactory* resolution of disputes" under the Act. *Id*. (emphasis added). Prohibiting enforcement of the 2008 arbitration order and award would frustrate this purpose, leaving Mr. Zelickson without a final or satisfactory resolution of this dispute.

Finally, even to the extent that the 2000 panel's authority was limited to determining whether the actions of the GSA were in violation of the Act, the 2008 panel did not exceed its authority by ordering the SLA to take action to remedy that violation. Notably, DOR had an additional option in lieu of suing the GSA to compel compliance—it could have placed Mr. Zelickson in a comparable facility. (*See* AR at 01236 [2008 Arbitration Order and Award at 13].) Thus, even if the 2000 panel had not ordered a specific remedy, DOR could have enforced the award. Accordingly, DOR was obliged to do so, and *Maryland* does not hold otherwise.

  **C.**  **Agencies do not have Discretion to Refuse to Comply with the Decision of Arbitration Panels under the Act**.

DOR argues that even assuming an SLA has a statutory duty to sue a federal agency, the act of deciding to file a suit is "akin to an act of prosecutorial discretion" and is non-reviewable in federal court. (DOR Br. at 12-16.) DOR relies heavily on *Georgia Dep't of Human Resources v. Nash*, 915 F.2d 1482 (11th Cir. 1990) in support of this argument. *Nash* is not on point.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

In *Nash*, the Eleventh Circuit considered whether the district court properly interpreted the Randolph-Sheppard Act to grant a blind vendor a cause of action for damages against the SLA for the SLA's failure to file a complaint with the Secretary of Education against the federal entity. The vendor, Jessie C. Nash, had been granted a license to operate a vending facility at a Marine base in Georgia. The Marines subsequently closed the vending facility that Nash was operating. Nash filed a complaint with the Secretary, requesting an arbitration pursuant to section 107d-1(a). The SLA conducted a hearing, but no hearing was convened, the hearing officer having concluded that the SLA had committed no violation in failing to file a complaint against the Marines under section 107d-1(b). *Id*. at 1485. Nash filed a second complaint with the Secretary, and an arbitration panel *was* eventually convened. That panel held that the SLA had violated section 107d-1(b) by not filing a complaint with the Secretary on Nash's behalf, and awarded her back pay damages. *Id*. at 1486. The SLA then sued Nash in federal court, naming the Secretary as well. The district court found that the SLA had discretion whether to file a complaint with the Secretary, but had abused its discretion in failing to do so. *Id*. The district court went on to grant Nash's motion to enforce the panel's back pay award. *Id.*

On appeal, the Eleventh Circuit reversed. The court concluded that subsection 107d-1(b) of the Randolph-Sheppard Act authorizes an SLA to bring complaints against federal entities but does not authorize vendors to do so. *Id*. at 1487. The court went on to state that subsection 107d-1(b) "leaves exercise of this power to the state agencies' discretion: the agencies '*may* file [ ] complaint[s].'" *Id*. (emphasis in original). The court explained that section 107d-1(a) (an arbitration convened pursuant to a vendor grievance against an SLA) "grants the blind vendor no substantive entitlement to any remedies." *Id*. at 1488. It stated, "Although this procedural right gives the vendor no substantive remedy, the right is not entirely empty. It guarantees the vendor an opportunity to convince the state agency to take action-to file a complaint pursuant to subsection (b)- even though the agency has discretion not to act." *Id*.

*Nash* is not binding on this Court, and this Court does not agree that Zelickson's rights under the Randolph-Sheppard Act were entirely (and merely) procedural. Moreover, all Zelickson is seeking to do here is get the benefit of what the DOR already established was his right, but what the DOR failed to go the whole distance in vindicating. In *Nash*, by contrast, the SLA refused to take any action in the first place.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

The court hypothesized that if the state's decision not to file a complaint with the Secretary pursuant to § 107d-1(b) was actionable against the state in an arbitration proceeding brought by the vendor against the SLA (*i.e.,* in a subsection (a) arbitration), then the subsection (a) panel would have to "look to the underlying [§ 107d-1(b)] dispute that the [state] should have brought against" the federal agency. *Id*. at 1493. The court believed that the "structure of the Act's remedial provision, however, makes it impossible for an arbitration panel convened under subsection (a) to conduct this type of inquiry," because the underlying dispute between the state and the federal agency "would have to be resolved by a subsection (b) panel. Because of the differences in the compositions and remedial powers of the two kinds of arbitration panels, a subsection (a) panel will be incapable of competently evaluating an issue properly within the purview of subsection (b)." *Id*. This concern is not implicated in Zelickson's case, because the underlying dispute between the state and the federal agency already was resolved by a subsection (b) panel, back in 2000. The subsection (a) panel (*i.e.*, the 2008 panel) merely determined whether, given that prior determination, the SLA had met its obligation to Zelickson.

**D.      Even if the United States' Sovereign Immunity Precluded an Award of Damages Against it, a Suit by the SLA against the GSA Would Not Have Been Futile**.

Finally, DOE argues that the 2000 arbitration panel's award of money damages against the GSA was precluded by the United States' sovereign immunity, and that "GSA undoubtedly would have disputed the award's validity had the SLA filed suit against the GSA to enforce it." (DOE Br. at 9.) However, as Mr. Zelickson points out, even if this were true,[6] the DOE does not argue that sovereign immunity prevented the panel from ordering Mr. Zelickson's reinstatement. *See also* Administrative Procedure Act, 5 U.S.C. § 702 (providing that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," and waiving sovereign immunity in such cases for an "action in a court of the United States seeking relief other than monetary damages"); *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998)

---

[6] No circuit court has directly ruled on this issue and the DOE points to only one case—*Hawaii v. U.S. Dept. of Educ.*, 2008 WL 4899249 (D. Haw. Nov. 20, 1998)—in which a court has found that the federal government has not waived its sovereign immunity in Randolph-Sheppard arbitrations.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1161 AHM (PLAx) | Date | March 17, 2010 |
|---|---|---|---|
| Title | ANTHONY P. SAUER v. U.S. DEPARTMENT OF EDUCATION, *et al*. | | |

("An action for specific performance is not an action for 'money damages' under APA § 702, even if the remedy may actually require a payment of money by the government."). Thus, at the very least, DOR could have filed a suit to compel the reinstatement of Mr. Zelickson.  Moreover, the 2000 award would have allowed GSA to litigate whether Mr. Zelickson was qualified to function as a vendor.  Its failure to even pursue that option could have and should have exposed it to federal court litigation.

## VI.     CONCLUSION

For the foregoing reasons, the Court finds that the 2008 arbitration decision was neither arbitrary nor an abuse of discretion and therefore AFFIRMS it.

No hearing is necessary.  Fed. R. Civ. P. 78; L. R. 7-15.


**JS-6**

|  | : |
|---|---|
| Initials of Preparer | SMO |